Hear ye, hear ye, this Honorable Appellate Court for the 2nd Judicial District is now open. The Honorable Robert P. Rennerin presiding. Thank you. Please be seated, everyone. Can I call the case, please? Yes, sir. Your Honor, the first case we would like to consider is Suite-22-0413, in which Robert P. Ingold, plaintiff's appellant, v. State Bank of Geneva, has trusted the request 1010 to send his appellee. Arguing on behalf of the appellant, Mr. Daniel E. O'Brien. Arguing on behalf of the appellee, Mr. Christopher G. Boynt Dunick. Thank you. Mr. O'Brien, you may proceed. Thank you, Your Honor. May it please the Court, Counsel. This case involves a defective condition that we believe is a concealed trip hazard. This is a condition where you can't separate the two factors that caused this concealed trip hazard. One being the nuisance level of grass that was a foot tall that obscured a buffalo box that was raised up above the ground at a level of three inches, creating a trip hazard that was concealed. I believe the trial court, in looking at the factors of this case, determined the defective condition in this case to be just the raised buffalo box and made the determination that that wasn't the responsibility of the property owner. In looking at Section 211.16 of the Code of Civil Procedure, inactivity or omissions that are negligent can cause a defective condition. And it is plain as position that that is what happened in this case. That provision that you cite in your reply brief, though, this provision applies to all torts, correct? Yes. And, for example, in strict liability, professional liability, products liability, it applies to all of them, correct? Yes, and negligent also. It's a comparative fault provision, correct? Comparative negligence provision? I think it – That is what it is. Yes, but it describes actions or omissions that can – The case law makes it clear, however, that the existence of a legal duty is a separate and distinct issue from the issue of contributory negligence. The first has to be duty, a finding that there's a duty, correct? Correct. Okay. I think there is a duty here. But that's not how we reach the issue of whether or not there's a duty. That provision is for comparative fault. The first has to be a finding that there's a legal duty. True. And I believe the evidence in this case supports that there was a legal duty. I think it could be a matter of judicial notice that everybody, whether they think of the legal responsibilities or not, it's as common as – well, not as common as death and taxes, but everybody mows the parkway and their property. They don't think about maybe the legal consequences of it, but property owners routinely mow both sides of the sidewalk or mow the parkway. And I think it's that common of a responsibility that was not done in this case. And every complaint I've seen written, negligent acts and or omissions are what are pleaded, and that's what was pleaded in this case. And what the evidence has shown, there were admitted omissions. You say in your brief that, in your reply brief, that the control of the parkway for purposes of mowing and maintaining the weeds is not disputed here and that that is sufficient to raise a duty. But the case that you cite, there was actual – the Smith v. Ragland, there actually was affirmative action by the adjoining landowner, correct? Correct. And also the case Rapinski, which we cited, which was not favorable for the plaintiff, where they tried to show that there was negligent mowing and caretaking of the parkway, which the court in that case said it was a presumption. There was no evidence that the actions of the homeowner or the property owner in that case contributed to the condition around the catch basin. In this case, it's undeniable that the concealed trip hazard occurred by the admitted failure to do what they should have done. That's in the evidence. James Coleman testified to that. He acknowledged that he should have been doing it and failed. So there's an admission of negligence, and then there's an admission by him in his testimony that as soon as this happened and the parkway was mowed, it was obvious to him that that buffalo box was raised up three inches. But it wasn't obvious to him until the parkway was properly mowed. So there was one party that could have prevented this and had a duty to prevent this, and that was the property owner in this case, state representing the property or in the place of the property owner. Counsel, I believe the three elements of tort are duty, breach of duty, and damages approximately caused. And I'm curious as to how the length of the grass, based upon the factual scenario that it's dark outside, it's nighttime, he's turning, he's not walking in a straight line. He didn't see it and probably wouldn't have seen it if the lawn had been mowed in any event. So the breach of duty relates to the failure to mow the lawn or the grass, pardon me, and it didn't approximately cause the damages because he couldn't have seen it anyway. Therefore, the approximate cause was the three inches of height above grade and not the condition. And you did mention the word condition. And usually a condition doesn't usually result in liability, at least not based upon the old case law I was working with 25 years ago. And the classic case I remember was the case where there was a farm implement and it kind of took over much of the two-lane highway. And somebody tried to go around it and ended up hitting a bridge abutment. And the case law said the implement was mere condition and the driver of the vehicle that drove into the bridge was at fault because it's supposed to be a breach that results in damages approximately caused by what the alleged duty relates to. And if the damages here weren't approximately caused by the lack of proper height that he could have seen it if he had looked or it had been bright enough to see it, then how is it that the motion for summary judgment wouldn't be granted on the basis that you failed to prove a crime-official case relating to approximate cause? Your Honor, the testimony was, if you consider the layout and the pictures that were part of the record, that he walked out from the apartment out towards his car and he observed and knew that the grass was at an excessive length. So walking out to his car, which was parked directly adjacent, parallel, excuse me, to the length of this parkway and all he could see was the grass. Had the grass been mowed at that point, then this three-inch raised buffalo box would have been more open and obvious to him. As Mr. Coleman testified, once it was all mowed, it was an open and obvious condition. I do believe the evidence supports that had he seen that walking out to his car, it would have caught his eye. He would not have stepped back into the parkway, as he testified to when he pulled a package from the backseat of his car and then turned and his foot unknowingly to him got caught on this raised buffalo box that he didn't see. I think it would have been obvious to him. So I do think the facts show that the grass, the excessively tall grass, did obscure this. Just looking at IPI 1501, the proximate cause jury instruction, it would be a contributing cause to the fact that the buffalo box was three inches off the ground. Proximate cause is enough if it contributes with another cause that results in this injury. I don't know how, in this case, the two factors can be separated without speculating. Could he have seen that? If this case didn't involve the grass, it would be more like the Rapinski case, where they tried in that case to argue that clumps of grass from poor mowing obscured the catch basin. And the court in that case said, no, those are conclusive affidavits, and the evidence did not support that. In this case, the evidence does support that the grass was so tall, the weeds were so tall, that they almost entirely, or from angles, depending on the angles, did entirely obstruct and conceal this three-inch trip hazard. So I do think there's factors to support the duty. It was foreseeable to the owner of the property that this should have been taken care of. Mr. Coleman, the property manager, acknowledged the responsibility for every property that they managed for the different owners in the city of Geneva, that it was their responsibility to mow the parkways, and they just neglected or failed to do it in this case. So I do think there's proximate cause. There's evidence of proximate cause that the state bank created or contributed to this defect. If you call the defect the combination of the tall grass and the raised buffalo box, what I've called a concealed trip hazard, then only the state bank created that specific defect. Only the state bank. What affirmative action did the state bank take to acquire control of the property? Because the general rule is that to exercise control, there has to be affirmative action. Right. Well, I think control, one exception to the post-occurrence remedial measures, is if you show after an incident that they took control of it and corrected the problem, then that's evidence of control, and that's what they did here. That's what James Coleman said. As soon as we learned about all of this, we went in there and mowed it. I saw that the buffalo box was raised three inches, realized we should have mowed it before, and that's evidence of control. I do think that the facts of this case, although different, the standard that this court set in Feedy, and I know, Justice McLaren, that that decision was authored by you. I do think that similar to that case, the plaintiff here presented sufficient evidence to raise a genuine issue of material fact, whether the state bank here themselves caused or contributed to the defective condition of the sidewalk. So when I said condition, if you look at that decision of Feedy, I kind of took the court's words at the beginning of that decision. So that's where I came up with the word condition, that it contributed to the defective condition. I don't know how there can be any analysis of the facts to suggest anything other than the inaction of the state bank contributed to that, at the very least, contributed to that defective condition that caused the plaintiff's injury. Thank you. I think the case primarily relied on by the lower court, the Hollenbeck case, the Ketch Basin case is factually distinguished, and in that case the property owner actually was doing some work on the parkway. In Feedy, Justice McLaren, you're correct, authored that, but it was obvious to the landowner that the sidewalk between a portion of the driveway was in horrible condition, and there were photographs showing that the other areas of the sidewalk were safe and didn't have holes or depressions in it, but that portion of the sidewalk that the tambone was responsible for wasn't, and that was the fact question. Right. You don't have that here. I think we do, in a different way, because we're talking about a concealed defect. It wasn't obvious until after Mr. Coleman finally did what he acknowledged he should have done before, and once the mowing of the parkway was finally performed after this took place, he acknowledged that that three-inch raised buffalo box was obvious to him. The only reason it wasn't obvious was because of, I mean, the pictures show how significantly bad the grass and weeds looked and obscured things in this parkway, and so I do think there's similarities there. It's the same analysis, but we're dealing with, again, two factors that created a concealed trip hazard. You're talking about, in one instance, there's notice. In the other instance, there is no notice prior to the injury. You may answer the question. There should have been notice. There was constructive notice. Had they done what they were responsible or they had a duty to do before this injury took place, as Mr. Coleman testified, he would have had direct notice. So there was constructive notice in this case. Any questions, Chris? Thank you. Have I answered your question, Your Honor? Yes. Any other questions? No. Thank you, Your Honors. Thank you. You will have an opportunity to make rebuttal. Mr. is it pronounced Buhnik? Yes. Thank you, Your Honor. Thank you, Justice. May it please the Court. The appellant relies on basically the ordinance to establish a duty of care on behalf of the state bank, and he's using a combination of the ordinance and the common law. And, unfortunately, he keeps circling back to the ordinance to create a duty of care. And the case law is very clear that can only happen if it's on the face of an ordinance or if it's a public safety measure. He basically abandoned the – it's obviously not on the face of the ordinance. And the public safety measure issue, although he makes an argument, it's more or less moot. As the case law has clearly held, indeed, that the municipalities have a non-delegable duty to maintain the parkway in this case. And they've also held that those types of ordinances are merely regulatory in nature and there to benefit the municipality. And as a result – and that's also upheld by the Restatement Second of Torts. And once you take away the cutting of the grass issue, which he keeps on trying to rely upon, but he can't because it's – neither of the factors to – this is an adjacent landowner case. This isn't the state bank's property. This is the municipality's property. Once you take away the – that there is no duty to cut the grass for a private right of action versus to benefit the municipality, the combination argument of the hidden defect goes away. And in this instance, neither the state bank created or directly caused any hidden defects or defective condition. They didn't plant the grass. They didn't put the water buffalo box in. They didn't cause the grass to grow tall. And they didn't cause the buffalo box to raise. So they had no involvement whatsoever. In fact, they had no notice of any condition on the property. And there's been no evidence of any notice on behalf of the state bank of any defective condition or that even a buffalo box was there. In terms of – I believe the case law is clear that in order for a legal duty under the common law to take effect – well, let me step back. I guess the first thing is it's – the rule of law is that the adjacent landowner owes no duty unless one of the three exceptions applies. And the one the appellant relies upon is that it caused the condition. And I believe that all the cases, including Thede, clearly establish that you have to actively and directly cause the condition, such as in Thede, the high use of the customers deteriorating the sidewalk. The court said, well, they actively caused that by their use. Here, I think the appellant admits there was no active or direct actions by the state bank in this instance. He's saying that their omission to act is a cause. And he's relying on the contribution statute, which I think the court aptly distinguished from a duty of care. And in this instance, none of the exceptions apply. Now, the claim of the appellant notes control to be established after the fact by a post-remedial measure. I want to address that. You know, in Thede, in Gilmore, in Grillo, if that was the case, all of the – the exception would be swallowed. Because, you know, in all those instances, there was an ordinance that said, well, you're required to do that. And if they merely fixed the defect afterwards, there would never be – you know, there would always be a duty. So I don't think that's an appropriate measure that a post-remedial measure can swallow an exception to the rule under this case. And as a result, I believe there is no common law duty. As in Gilmore and the Evanston is an example, the Evanston ordinance required them to maintain a parkway. They didn't cause the deterioration or the defect. And that was the crux of the case there. And same with Clicus, you know, removal of snow. Because this isn't a public safety measure, and I think that's clear, although it wasn't addressed today, you know, the fact that the ordinance said eight inches or more has to be cut, you know, the fact that it's not seven inches or six inches or five inches, all of those suggest that it's not intended to be a safety measure, but in fact just a benefit to the municipality. And it also didn't include leaves or snow. So counsel, what about the argument that the inclusion of the word nuisance indicates its safety? What about that argument? Right. And I – clearly it did state nuisance, but that alone and that definition, you know, the claim of the appellant is using the term nuisance and he's defining it as a public safety measure. In this instance, it's a mere – you know, it's meant to be an annoyance. It's an eyesore. They don't want long grass in the municipality. And that's not a – if it was meant to be a safety measure, it would have been lower in number, like three inches or four inches to contemplate hiding a hole or some unevenness of the parkway. But in this instance, because it says eight inches, that's clear it wasn't meant to be a public safety measure and nuisance wasn't intended in that fashion. And on top of it, he's attempting to utilize nuisance in his manner to his benefit, but he has not established that was the intent of the municipality. He could have done some research in why they use that word nuisance, but he hadn't. And I think in this instance, it's clear it was meant to be not an annoyance or an eyesore versus a public safety measure because of the other language in the ordinance, being that it was eight inches or more as opposed to – or any other debris or anything else on the parkway that could have potentially hidden a buffalo box or any other potential defect on the parkway. Here, I think the city obviously wanted its owners of private property to take care of cutting lawn grass because of the burden that it would place on the municipality versus a public safety measure. Counsel, didn't the judge – at least I thought I read that the judge made a comment that suggested that even if there had been compliance with the ordinance and the grass had been weed whacked or lowered to eight inches, it still would have covered the buffalo box. Compliance is great. Instead of a breach of the ordinance would not have resulted in any difference. It's similar to if a tree falls in the forest and no one's present, it doesn't make a sound. So how – am I correct that the trial court made a comment like that? Yeah, I believe so, Justice. I think the trial court fairly quickly eliminated the ordinance partly for that reason alone. And when I remember a question was asked of me during the argument about did we create a nuisance, and I had, I believe, argued at that point, no, we didn't create the grass to grow tall, which is a little different than, you know, what we're talking about. And, again, I agree that if the grass was seven and a half inches and they had weed whacked it before this incident to seven and a half inches, if they just did it to that minimum, I think it's factually clear that the buffalo box, which was measured, was three inches above grade, would have clearly also been hidden. And I think that supports the argument that it's really not – the ordinance is not – should not be considered in this case because it wasn't a public safety measure. And, yes, it would have hidden probably fairly clearly any buffalo box. And it was at night. And to argue now that he would have seen it is speculative. He said he didn't see it. He never used that parkway. It's a very small – if you saw the pictures, Justices, it's a six – Could the city have put AstroTurf down or black topped it over or put mulch down? Absolutely. And this was – the whole property adjacent to the parkway had no grass. So my client had no grass whatsoever on any of the other property. And that's why the lawn service that was retained never went to that property because on the property itself there was no grass. There was – and this parkway wasn't their property. And it was a very small little plot. And it was – a record didn't establish who had been cutting it in the years. But somebody obviously was because for the seven years before what we – when my client owned it, it was never done by them. But, yes, they could have put mulch. They could have put AstroTurf. They could have put rocks. But, yes, they had all those choices. And I keep coming back to this. Well, the opponent's argument is, well, the grass combined with the buckle box, neither of which we caused. But if there was leaves over it, they would be making the same case that we should have raked the leaves. But there is no ordinance, I believe, on leaves. But we didn't talk about that. Or even snow. If there was a dusting of snow over it, the same facts apply. The ordinance didn't include those things because it wasn't a public safety measure. And when you take the public safety measure out, he's left with a buckle box that was above grade that the municipality admitted they maintained and it was their responsibility to check on. And they would repair those by lowering them when they were notified. And here we had no notice that it was above grade. I don't know how long it was above grade. There's no evidence to that fact. But when you get to the three exceptions, they have to establish, I believe the case law is clear, and Thede and Gilmore and Klickus, that we actively contributed to this defect. And if we had put a box or put a tarp or put something over it to cover the or something that if we dug around there or were using that property to move up the buffalo box and to raise it, then there would be active, direct affirmative acts that they could rely on. But here in this instance, in fact, we did absolutely nothing. And I understand that the ordinance said we were to cut the grass, but that can't be used as a sword by the appellant in this instance. And when you take that away, the courts are pretty clear that you have to actively cause it by use, like in Thede. And the case is relied upon the plaintiff in this case, where you dug a hole or high use. But in here, there was no instance that we did anything to create or cause this, and I think that's the crux of the case. And the restatement second of torts supports that. The IPI-135 talks about active or direct cause in the case law. And no case to date has said an omission to act, failure to act, is a basis under the exception to the general rule that you owe a duty for land that's not yours, that's adjacent to you. So I think all the case law to date has said you have to actively cause it. And the appellant hasn't found a case that said the failure to act can be one of these three exceptions under the general rule. And for those reasons, I think the trial court was correct, and I ask with all due respect that this court uphold the trial court's ruling. Thank you. Thank you. Mr. O'Brien, you may proceed with rebuttal. Thank you, Your Honor. In response to that, I would say that counsel mentioned a situation of putting a tarp. They didn't actively do something like putting a tarp to obscure the raised buffalo box. I would submit that their inactivity allowing the grass to grow, whether it's 7-1⁄2 inches, 7 inches, 8 or 12, is factually the same as a tarp obscuring this trip hazard. And so it becomes a concealed trip hazard that they contributed to by their negligent omission. And when I cited earlier to the Thiede case, and I put it in our brief, when this court cited to Barker v. Kroger Grocery, it did cite the opinion where it said, it may further be said that defendant owed no duty to plaintiff to keep the sidewalk in repair for the repair of public streets and sidewalks, peculiarly within the province of the city authorities. However, defendant owed plaintiff the negative duty not to negligently use the sidewalk here in question. And I think that's what happened here very clearly. There are facts to show, undoubtedly, admittedly, that State Bank, on behalf of the owners, they used this parkway in such a manner by failing to do a very basic responsibility of mowing that every one of us in this room knows we do, and that caused the injury. Do you have any authority for the proposition that not doing anything is affirmative action? I think it's akin to affirmative action. Would you agree that if we were to agree with you, it would be a case of First Depression in Illinois, if we made that holding? You know, I don't think so. I think all these cases talked about. What case do you have that says that? I don't have a case that says it the way you're stating it, Your Honor, but how is this different? I'm restating your argument. That's your argument, that not doing anything constitutes affirmative action. I think it's affirmative negligence, neglect. Neglect is not doing anything. I'm sure there are a number of cases that talk about acts of neglect constituting or being sufficient to show negligence. I think the Rapinski case, what did in the plaintiff in that case, was that the property owner did do these things around the area of that catch basin that prevented a genuine issue of material effect when there was a directed verdict. In this case, there's no such thing. They tried to show that the property owner in that case negligently performed these routine functions of mowing, and they brought up the issue of grass. In this case, there was nothing. And I just, you know, if that was done in this case and we were dealing with an open and obvious condition of a three-inch raised buffalo box, there would be no case everybody would agree on that. But the lack of notice in this case was caused by the negligent omissions of the property owner. They failed to do anything to prevent this hazardous condition from existing. So a decision to say that an omission cannot create a duty would, in this case, say that in parkways where there's this dispute of who's got responsibility for it, when everybody knows the property owner has the responsibility to mow it, that there'll never be a case where a plaintiff could succeed on it because everybody's pointing the finger at each other and saying, it's not me, it's not me. So right now it's nobody. There's nobody responsible for this parkway. That's what the trial court's decision says. It's go near this parkway at your own risk because there's no liability for it on anybody. And that's not the law in Illinois either. And that's not a fair interpretation. Could I interrupt, please? I think the trial court judge found that the city should be dismissed out because the city didn't have any actual or constructive notice of the defect. So when you say that there is no liability, it's conditioned upon the fact that in order to incur liability, one must be aware of the fact that there is a defect that they have to do something about. So I think you're going a little bit beyond the pale when you say that no one is liable. The city could have been liable had they been given constructive notice. Had the defendant, State Bank, mowed the grass, they would have had constructive notice because then it would have been more obvious. It's a circular argument because with the facts in this case, there's no way we can get out of that circle, Your Honor, to point the blame on anybody. Does the ordinance say that the property has to be mowed or that the grass or weed should not extend higher than 8 inches? They say it should not extend higher than 8 inches. So it doesn't require mowing. You could weed whack the top down to 8 inches or 6 inches or 7 inches or you could just run a muck and literally rip out the weeds at the root with the weed whacker. Is that not correct or is that not possible? That is correct and that is possible. That's why I focused more on the common law arguments under Thiede, which I think most strongly support the creation of a genuine issue of material fact in this case. Doesn't the common law require some affirmative act? I don't think so in this case. I think the affirmative act is to sit there and watch this grass grow to a nuisance level in this case, but even to a level, if not an ordinance level of nuisance, something that everybody in this courtroom would consider a nuisance if it was your neighbor allowing the grass to grow like this. If 40% of the people in our neighborhood were not mowing the parkways, a lot of people would say something about it and something would get done about it, and it should have happened in this case. Any other questions? No. I believe the time is up, is it not? Yes. Yes, there it is. There is the sign. Thank you, Your Honor. We will take the case under advisement. We have other cases on the call. It will be a short recess.